We're going to proceed on the next case, which is Beltway Paving v. Pruco Life Insurance, and Ms. Gaines. Yes, sir. May it please the Court, my name is Eden Brown Gaines, and I'm representing Beltway Paving, Incorporated. You're going to maybe pull the mic over, or you can just speak across the room. We're over here. Okay, my children would never say I'm soft-spoken, but everyone else says that. I'm certain the Court is familiar with the facts of this case, so with the Court's permission, I'm going to dispense with the recitation of the facts and just address them as they're relevant to the argument. The District Court, in its analysis, stated initially the standard for an unjust enrichment claim, indicating that the District Court recognized this as an unjust enrichment claim against the estate. But after stating the standard, the opinion goes off the rails into a different direction that isn't what this case is about. And I think the District Court's failure to understand that the premise of the claim is unjust enrichment concerning the estate, and instead looking to the contractual relationships and equitable adjustments between the insurance company and the parties was in and of itself. But wouldn't they be one and the same if the insurance policy was held that it was required to make payment to the estate? In other words, if contractually the insurance policy had to be paid to the estate, it's hard to argue that the estate then is unjustly enriched. The estate may not even have known that it's coming, or it may have orchestrated it. But it seems to me you have to fall back at some point on the policy and say, did the policy require payment to the estate? Not under the unjust enrichment context in the state of Maryland. I cited to Hill v. Cross Country Settlements in the briefing because I just think that's a good case in Maryland that not only enumerates the standard for unjust enrichment, but gives context to the purpose of an unjust enrichment claim in Maryland and explains in greater detail with respect to what unjust enrichment is really about. So the issue isn't really about whether or not the insurance company properly paid the proceeds to the estate. It's about- Let's explore this because this gets a little bit to the heart. If, set aside this case, if the insurance party clearly designated a person as the beneficiary of the policy, and the insurance company pays that policy to the person, what kind of case could be to deprive that person of the benefit of that contract? In other words, if the contract clearly said this is going to go to Mrs. Smith, I've designated Mrs. Smith the beneficiary, I die, and the insurance company pays the policy to Mrs. Smith. And other families saying, oh, before he died he promised this, he promised that, and so forth. And the insurance company said, the policy said I pay it to Mrs. Smith. Now the question is, how could we ever argue Mrs. Smith's unjustly enriched if the policy authorized that, properly authorized that? For several reasons, Your Honor. Because in an unjust enrichment claim, the focus isn't on the insurance company at all. It's not whether or not the insurance company properly paid the proceeds. The focus is, as you've noted, whether or not the estate properly retains the proceeds. And under unjust enrichment, the court said that the focus is whether or not the defendant should be deprived of benefits that in equity and in good conscience he ought not keep. That's Hill versus cross-country settlements. Well, what is the basis for establishing that? I mean, yeah, the end result is what you just gave. But in order to get there, at least under Maryland law, as I understand it, and you, of course, understand Maryland law better than I do, but under Maryland law, you've got to show that at some point in time there was some effort by the beneficiary to change this policy. Is it more the person who's the beneficiary at the time he's living, when Williams died? More to the beneficiary. So it is more. I'm sorry, Your Honor. It's Williams who is the beneficiary and more is the decedent. William dies. Then it's more. That's correct. Yes, sir. And the problem is when more dies, where does the policy go? Is that right? Yes, Your Honor, that's correct. But that's all the contract discussion. That's the discussion of the contract claim between the parties and the insurance company. But the opportunity to change the beneficiary, Judge Niemeyer has indicated, the policy indicated as a specific beneficiary. You say that beneficiary shouldn't be that. The intent, equitably, was for it to go to Belway. So who was to change the policy? Whether or not the insurance policy got changed and whether or not the parties went through the proper steps to change it isn't really relevant to the unjust enrichment. It's not relevant as to whether they made any effort whatsoever to change the beneficiary on a policy on the Maryland law? Not to the unjust enrichment claim. Well, how is it not relevant? One of the things you have to prove on the unjust enrichment is that your argument is that Belway paid for this policy, and so the benefit of the policy should go to Belway. So how is it not relevant that the beneficiary is not changed on the policy by, I think it's Ms. Williams Murphy? Because the changing of the beneficiary, Your Honor, is subsumed within the concept of the contract law, the contract issue between the insurance company, the owner, and the insured. In an unjust enrichment claim, the court isn't to focus on the contract between the insured and the insurance company. It's supposed to focus on just the ultimate benefit they got. It focuses on the fact that the recipient was unjustly enriched, unjustly. But if the contract says that person's supposed to be benefited, then there's no unjust aspect about it. In other words, Moore and Williams, the 2017 policy was distinct from the 2015 policy, which had a rider. It was a key man type of policy. Here are these two partners who know each other well and work with each other, just did the policy between the two of them. And whatever they did over golf, they say, well, let's give each other policies. Now, they used their business, but the two of them owned the whole business. They used their business to pay for the policy. But the two of them set it up, and Moore said, all right, Williams, I'm going to make you the beneficiary, and if you die before me, it will come back to my estate. That's what the policy says. And so Moore died before. Policy says it now goes back to, I mean, Williams died before. It comes back to Moore's estate. And he dies a few months later. They all die together, I guess, somehow or reason. But it went exactly as they specified. Now the question is the recipient. You say it's unfair for the recipient to receive it. But the recipient received exactly what was legally designated to be received. So two things on that to both your honors. Unjust enrichment is a quasi-contract theory. It's a theory for when a contract doesn't exist. So it doesn't make sense to talk about the insurance contract that does exist in an unjust enrichment stance. Unjust enrichment is supposed to focus on the parties who don't have a contract, which would be the estate and beltway paving in this case. It's a quasi-contract theory. You can't have a contract. The question, though, is really going to how do you get to that result. You're correct. That's the end of it. But the reason a contract is important is because you have this beneficiary. Take this example. You've got Tim Moore there. And I guess it's within eight months he then dies after Williams. And that creates the problem because then you say beltway should get it. What if he waits five years and Tim Moore's name is still up there? You think you've been unjustly enriched in all that five years or ten years? In this instance, what is represented in the question here is whether what you're alleging is that Moore intended for beltway to be the recipient of this. Maryland law requires that he took some steps to do something, and he did nothing even after getting the indication. He did absolutely nothing. Respectfully, Your Honor, that is in the contract theory with the insurance company. You're correct on Maryland law with respect to whether the insurance company properly paid these proceeds. But when you're looking at the unjust enrichment theory, it's not about compensating the plaintiff, whether the insurance company broke the contract. It's about forcing the defendant to disgorge benefits that would be unjust for him to keep. The reason it's unjust for them, I know you want to answer that. Why is it unjust for the estate to keep the benefits of the decedent? I mean, why is that unjust? Because they didn't pay for the policy? That's one of the factors, yes, ma'am. Except these two guys could have been playing golf. They both own the business. They own it totally. They say we're going to pay for the premiums, and whoever wins this golf game becomes the beneficiary and I'll buy the policy. I mean, they entered into this policy two years after they did the business policy, 2017, and it makes no mention of paving. They use their paving money to pay the premiums, but that's it. They designated one as the beneficiary, and then under the policy they got, it goes back to the other if it predeceases. And so the insurance company just follows the law and legally and obligation-wise pays it to the estate. Now you say it's unfair for the state to receive something that the insurance company gave it? That's correct. Why shouldn't the insurance company have given it? Because the insurance company giving it isn't relevant here. They didn't interplead. They actually made a decision and gave the money. So now the court needs to look into the funnel of the relationship between the estate and Beltway Paving. There's no contract, no obligation. But wouldn't it be the relationship between the estate and Moore? You're saying Beltway because Beltway paid for it, but Moore is a member of Beltway. Sure. He might have a minority interest in the company, but he's still a member of the company, and so wouldn't he have an interest in, I mean, Beltway, I understand you're saying Beltway, the company paid it, but with him being a member of the company, wouldn't it be the relationship between Moore and his estate? Sure, and the undisputed fact is that Moore did not intend for his estate to have this policy. I'm not sure about that because when they have this meeting on March of 2020, he's asking, there's some conversation, I believe, about where Moore is saying, I don't want to make Beltway the beneficiary. That was the issue at the March 2020 meeting. There was a dispute at that meeting. Yeah, they didn't agree. She wanted Beltway to be the beneficiary. He didn't agree to it. No, ma'am, the email that's in the record makes clear what came out of that meeting. The email has a section that clearly says action items, and one of those action items was clearly to make sure that the policy that mistakenly identified Mr. Williams as the beneficiary was changed to Beltway Paving. And what happened is that the company said that action item was something, alerting, he said he was just alerting them. And so he then sends three emails to see if they want to change anything, and there's no response. They told them that they wanted to make sure that this was their insurance structure. They told them that they had a buy-sell agreement. But no decision had been made. The meeting, everybody, your client didn't even remember the meeting and didn't dispute what took place at the meeting. But the meeting, there was a disagreement as to how the policy was to be framed. And they hadn't resolved that yet. No, sir. My client- And an action item, or the agent came in and he said, he was at the meeting, testified, and he said, this needs to be taken care of. Ms. Murphy was clear that before the meeting, there was an intent for Beltway Paving to be the beneficiary, to ensure that Beltway Paving got that money in order to- Where did she get to say that? Because she's the CEO of the company, and she calls the company to pay all of the premiums. She worked closely with Mr. Moore, who always expressed to her the intent that this is exactly what it was supposed to be. The meeting was fully about making sure that what was mistakenly done was corrected, and she understood her partner to be taking care of that, which she testified to consistently all along. But Mr. Schubert testified, Mr. Schubert testified that Moore and Murphy disagreed on a beneficiary, because Moore wanted it to go to his family. Mr. Schubert's testimony can't do more, Your Honor, than raise a genuine issue of material fact that would have caused this to go to trial, because if you look- But there's no dispute about that. There is a dispute. The email itself conflicts with what Mr. Schubert testified about. If you look at the email, it says action items. It says clearly that the beneficiary was to change to Beltway Paving, and it said action items. When it said action items under Mr. Moore, it was to make sure that this was effectuated. So I understand what Mr. Schubert said, but that is inconsistent with what he wrote in the time as a business record and sent to Beltway Paving. So if the court- He said, and he also testified that the email that he sent to them was because of this disagreement, and these were just mere suggestions. It says action items. That's different than a mere suggestion. I'm just saying this is what he testified to in his deposition. Is that not correct? It is correct. But what I'm saying is that that conflicts with what is in evidence. And so at worst, instead of granting summary judgment, the court should have recognized that if it was important as a genuine- But he explained what he said there. He said it was an action item that they had to address. He didn't say it was a decision that had been made. But it's clearly consistent. And he explained that. He said it had not been decided, right? That's right, Your Honor. But it's clearly consistent with Ms. Murphy's testimony that at all points, before that meeting and after that meeting, it was supposed to be corrected to reflect what was the intent of the parties. And so if we're going to believe- She didn't testify to any knowledge about the meeting. Her knowledge of the meeting isn't significant, because what she did testify to after the meeting is that her understanding that her partner was taking care of this. And he was going to make sure that this got changed and it was done correctly, which is why she continued to pay the insurance premium for Beltway Paving, because this was her understanding. It was all about being able to discharge their requirements under buy-sell agreements after death. She was consistent before this meeting and after the meeting. The fact that she did not attend the meeting is insignificant. I'm only saying that if the court found this to be significant, Mr. Schubert's testimony is clearly inconsistent with what he wrote. And at worst, the court would have had to have said- I don't know if it's- I'm looking at the document at JA-286, and in here he's saying from the conversation, Tim and Christine wanted $500,000 to go to their spouses directly and for Beltway to have $2 million, and for Tim $3 million, for Christine as a part of the- I mean, so he's indicating that there was some discussion about family members receiving part of this policy. Yes, ma'am, but he's also indicating the discussion about changing it, because at the time, the way it looked with the beneficiaries is that there was only going to be $1 million to Beltway Paving on Mr. Moore's life, and it needed to be changed so that it would be $2 million. So you also see in that box that he wrote where it does say recommendations, the subject insurance policy is changing that from Mr. Williams being the beneficiary to Beltway Paving. Then when you go down at the bottom of the chart and you look to action items, you see for Tim it makes clear that the insurance is supposed to change from $1 million to $2 million, which means that it's going to have to be corrected, that Mr. Williams shouldn't be listed as the beneficiary, that it in fact should be Beltway Paving, and then that was the expectation. That was certainly the CEO's expectation. She doesn't recall the meeting, but she does recall that that was the expectation, that there was something wrong with the insurance the way it was indicated. When they got the insurance policy and she started paying the bill, she thought her father and partner had done things correctly. She had no idea until her partner brought it to her attention that there was an issue, that she was paying on a policy that was wrongly named for a beneficiary. Well, does it make a difference that she didn't respond to the e-mail? The e-mails were to both of them on the e-mail, but it was her understanding that her partner was handling that. So she trusted that her partner had completed this information, completed what was necessary. She continued paying. She didn't stop paying for Beltway Paving because the intent was all along for it to still be Beltway Paving. So while Mr. Moore didn't do what she expected him to do, that was certainly her expectation, and it's that intent that is significant to an unjust enrichment claim, not a contract claim against the insurance company, but an unjust enrichment claim against the estate. Under Maryland law, is it fair, is it equitable for a windfall to happen, should the estate be disgorged of the benefits? And in the Kowalski case that I placed in, understanding that it was a Florida case, that's exactly what that court considered, not whether the insurance company had a contractual obligation to pay or not pay, not whether people changed the beneficiary or took steps, but exactly what happened here. Well, that case is a lot different because in that case they didn't know, the person did not know. Here it's a little bit different because you have these e-mails, you have a meeting. I think that case is distinguishable from this situation. Not in a relevant way, Your Honor, respectfully. I'm using my time, and I can come back and talk about that in rebuttal because I'm sure it's going to come up, but not in a relevant way. The court definitely looked to who paid the premiums and what the understanding was, and it was clear from the testimony here that Beltway Paving did have the understanding that they were paying these premiums because they thought it was going to be the beneficiary in order to discharge their buy-sell obligations. Yeah, you got some rebuttal. Okay, thank you. Good morning, Your Honors. May it please the Court. My name is Brian Donnelly. I represent Lisa Moore as personal representative of the estate of Timothy Moore. This case is about a failure of evidence. Beltway has alleged unjust enrichment because the estate of its deceased principal, Mr. Moore, received proceeds of an insurance policy that Beltway paid the premiums for. Now, to prove unjust enrichment, they need to prove three things, as the Court well knows. One, that a benefit was conferred on the estate. Two, the estate's knowledge of the benefit. And three, that the estate accepted the benefit under inequitable circumstances. Now, there's no dispute that the first two elements are satisfied. We all agree on that. But Beltway has not come forward with any admissible evidence of inequitable circumstances in this case. The policy language was clear. Beltway knew, at least as of March 2020, that it was not the beneficiary, and Beltway continued to pay the premiums on the policy with full knowledge that it was not the beneficiary. So exactly what was supposed to happen in this case happened. Now, by way of a preview, I'm going to go through just briefly some key facts. I'm going to discuss why this Court should not adopt Beltway's reading of the Kowalski case. I think we need to crystallize what the issue is in this case. Ms. Gaines has put forth rather forcefully that this is about inequity, and inequity in the sense that we focus on what is inequitable to do in this case. But there are questions under Maryland law in terms of what would establish the circumstances of it. And I think it would be helpful to point to the Maryland law on it, the cases specifically to deal with insurance policies and how it, and while maybe Ms. Gaines didn't think you ought to look at the beneficiary law on it, it seems to me, maybe you see it different than I want to hear it, Maryland law does take that as the basis upon which one works. That's why you get in this business of, well, the policy says this, the policy says that, and the beneficiary is that. That's not the end of the story under Maryland law. There is a case that can be made for equitable remedy here, but there are components there that we should focus on, and not just general type information, but what Mr. Moore specifically did, because he's the beneficiary, and the question, or he has the policy, and the question is, how do you go about changing it? You can't just know someone has a policy with particular beneficiaries on it, but then have this belief, well, it is actually intended for this one, as though it's a constructive sort of policy. You have to take some steps, and in certain cases, steps were taken where, you know, the beneficiary or attempts were made to actually change it. They actually thought they were the beneficiary on the policy of things of that nature. They paid with that kind of understanding. So differentiate that, I think, which is the issue in this case is really the equitable relief one, and it turns on Maryland law, so focus us on Maryland law on that. Thank you, Your Honor, and as the district court discussed at length, there's a line of cases starting with the Urquhart case. Pick your best one. Well, I'll go with the Urquhart case, Your Honor, and it's all essentially the same fact pattern, which is – Which court of Maryland held this? This is the highest court of Maryland holding this? I believe so, Your Honor. Okay. But the fact pattern is the same. Again, there's someone who mistakenly believes that they were the beneficiary because they took all efforts in their power to change the beneficiary, and because of something outside their control, it didn't happen. And in those cases, the court has said, as a matter of equity, we're going to, you know, equitably make them the beneficiary because not only did they think they were, but they took affirmative actions to try to make themselves the beneficiary. Not just any affirmative actions, all actions within their power. And this case is completely distinct from that, Your Honor. One, the evidence is clear in the record that nobody took any actions to change the beneficiary. Two, the focus on the Maryland case law is – And what sort of actions are you referring to? What if he just intended it or it was understood that that's what you were holding it for? It's not enough, Your Honor. Maryland law – It kind of reminds me of establishing a constructive trust type situation. You don't actually have to – you inform this is what this is for, and yet you maintain it, but you know what it is for, all the parties. I think, under that hypothetical, Your Honor, it still doesn't apply to this case because Ms. Murphy knew full well that Beltway was not the beneficiary at the time. And I'd submit, Your Honor, that even assuming what she says is true, which we dispute that Mr. Moore told her he was going to change it, eight months went by. There's some obligation on Ms. Murphy to take a step to confirm that what she thinks is being changed is being changed. She took absolutely no action. She ignored three emails from the insurance agents to follow up on what were clearly recommended changes. Language is very clear in that email. Recommended changes. Is it for or against her that she paid the premiums on this, knowing that he was the beneficiary? It's against their argument, Your Honor. It's different than the Kowalski case out of Florida, I take it? Yes, Your Honor. In the Kowalski case, Ms. Kowalski continued making payments under the mistaken belief that she was the beneficiary. In this case, the record is crystal clear that Ms. Murphy knew, at least as of March 2020, that Beltway was not the beneficiary, and she made payments with that knowledge that someone else, specifically the estate, was the beneficiary. So I agree with Judge Benjamin. This is distinguishable from Kowalski. I also would agree with the district court that the Maryland law is very clear that it's not just whether Ms. Murphy took any actions, it's the policy who has to take the actions. And it's also very clear on the record that Mr. Moore didn't take any actions to try to change the policy. Does the competing testimony, I guess it's Mr. Schubert and Ms. Williams-Murphy, about what happened at the March, I mean, she says she didn't remember it, but what happened at the March 2020 meeting, does that create a genuine issue of fact? It doesn't, Your Honor, because as Your Honor just noted, Ms. Murphy doesn't remember the meeting even happened. She's simply not competent to testify about what happened at that meeting. She has no personal knowledge. There were four people at that meeting. Mr. Moore, Ms. Murphy, Mr. Schubert, and Ms. Warfield. Mr. Schubert and Ms. Warfield were both insurance agents. Mr. Moore is deceased. He can't talk about what happened at the meeting. Ms. Murphy doesn't remember what happened at the meeting. She can't talk about it. The only two that can talk about it are Mr. Schubert and Ms. Warfield, and they both unequivocally testified at deposition that no instruction was given at that meeting to change the beneficiary of this policy. What about the e-mail? Does that create a genuine issue of fact? No, Your Honor, and that's, I think, the only piece of evidence that they're actually relying on is this e-mail. Mr. Schubert testified that that e-mail was intended to memorialize what happened at the March 5th meeting. He testified from personal knowledge that it was not intended to document decisions that had already been made, and I think the e-mail is very clear in the first paragraph what its purpose was. It says he's going to summarize current policies, which he did, and give recommended changes. He goes on to state Ms. Gaines made a lot of the action items, he states. Those were specifically listed as action items for Mr. Moore and for Ms. Murphy, action items they had to take. And then he goes beyond that. He says, I will call to discuss. He reached out to them several times with no response. I think if language means anything, no reasonable juror could look at that e-mail and find based on it that anyone instructed Mr. Schubert to make changes to a policy during this March 5th meeting, which is not supported by the record. To the contrary, the e-mail shows what are two key facts in this case. One, that Beltway was, in fact, on notice that it was not the beneficiary as of March 5th, 2020, at least as of that date. And two, Beltway would have to take actual actions to change a beneficiary, Mr. Moore or Beltway. And none of those things happened. He testified a little more fully that at the meeting, all parties recognized that Moore was the beneficiary and his estate was. And that they understood that. And Moore and Murphy had a disagreement as to who should be. And he said they needed to make a decision on that. He recommended that Paving be the beneficiary, but they had to let him know. And he sent that e-mail to both Moore and Murphy. And neither one responded. That's right, Your Honor. And then in that state of affairs, Moore dies. That's right, Your Honor. And it's even more than that. He testified that at that meeting, they could not agree on who the new beneficiary should be. And Beltway Paving was not one of the two options they were disagreeing on. It was Mr. Moore wanted his wife to be the beneficiary, and Ms. Murphy wanted herself and her brother to be the beneficiary. So it's not even consistent with Beltway's theory that Beltway was even under discussion to be the beneficiary of this policy. I only have a couple minutes left, Your Honor, before I turn it over to Ms. Carroll. I want to just briefly spend a moment on the estate's alternative argument, which was that Beltway's claim in this case was waived. Beltway has maintained throughout this case that the whole purpose of these insurance policies was to fund buy-sell obligations under a stockholders' agreement. In other words, if a principal died, these insurance policies would provide Beltway with a source of funds to pay the estate to buy that person's stock. While this lawsuit was pending, the parties, in fact, entered into an agreement under which Beltway redeemed Mr. Moore's stock from his estate. And as part of that agreement, there was a waiver provision that waived the estate from all liability against Beltway relating to the stockholders' agreement or Mr. Moore's employment with the company. If Beltway is correct that the whole purpose of this insurance arrangement was to fund the stockholder obligations, then that waiver must apply to Beltway's claim in this case. It's all related. At this point, unless the Court has other questions, I'm going to cede the podium. May it please the Court. My name is Christina Carroll of Denton's U.S. LLP, here on behalf of Pruco Insurance Company. Regardless of the claim for unjust enrichment, Beltway admits in its opening brief on page 4, and then again here today, that the focus of Beltway's claim is its unjust enrichment claim against the estate only. And whether it was inequitable for the estate to retain- Let me ask you just something fundamental.  Is there a claim against Pruco? Yes, Your Honor. I was about to address that. I'm happy to address that. We don't understand what the claim is, frankly, against Pruco. The case started out as solely against Pruco as a declaratory judgment action, no breach of contract, no error in omission claim, no negligence claim, seeking a declaration that Beltway was the correct beneficiary under the 2017 policy or that Williams was named in error. There was then- You would want to have a declaratory judgment indicating, once you know, at least I guess have some notice that someone else is claiming to be the beneficiary. I mean, you paid the way the policy said pay it. But once you do that, I guess the question becomes, you know, should you have done that or should you ask? I don't know how that works. I'd be happy to answer your question, Judge Winn. When Pruco received in November 2020 the letter- I want to also follow up just to ask because I've become curious. I mean, if there's a million dollars out there, you've already paid it out. And if they don't have it, I guess the idea is you should have paid it to us, but it's too late. You've already paid it. Right, but that claim was not asserted. Frankly, the claim was never amended. It was never amended in terms of we would respond and say that if the insurance company does not have the proceeds anymore, and there's no breach of contract claim, no error in omission claim, no filling out the forms improperly, something of that nature, then what is the claim? And there would be no response in the briefing, as you'll see in the record, either at the motion to dismiss stage, judgment on the pleadings, or even now in summary judgment where it just basically says a declaratory judgment would be nice for clarity and finality. As to your question about- It seems to me a declaratory judgment is usually the backside of a breach of contract claim, but there again, they do not assert. And she confessed that this is not a breach of contract claim. Correct. Normally, a declaratory judgment action in the insurance context would be like whether there's coverage, does an exclusion apply, what does the provision apply, hand in hand, but that's been abandoned. But returning back to Judge Niemeyer's first question, what is your role here? I mean, unjust enrichment wouldn't prevail against you, would it? Correct. That's right. Regardless of- Unless the other side is seeking some form of contribution, how are you in this case? We don't know. We would like to not be in this case. But you've got eight minutes of it. Yes. That's what I'm trying to say. You've got a substantial amount of this argument for an entity that the real issue in this case deals with unjust enrichment, and yet we are talking about whether you paid something on a policy to a beneficiary that's right there on the policy, and now, and as I understand it, no direct claim is made for breach of contract or failure to do something. What? Yes, we're happy- Why are you- We're happy to cede our time and just answer your question on the- I'm not talking about happy to cede time. I just want to know why you're here. I'm trying to understand it. We would also like to know why we're here, yes. But you're the one here. We have to respond to the claim. You're trying to eliminate risk, aren't you? We're trying to eliminate risk on the claim and to answer any questions. What would be the risk? We're still named. There's still the claim that's like a declaratory judgment, and we're not sure for what. It's harder to respond to sort of the amorphous than it is to the concrete. I can tell you that the insurance company paid pursuant to the policy because that's what it's supposed to do. It did not- You are named, and what is the allegation against you? It's been a moving target in every pleading and brief. So we'd say that there's no- I think at the trial level, because we reviewed the orders at the trial level insofar as you. How was it dismissed as to you? It's dismissed as a moot point. At the end, it's dismissed as a moot point because no unjust enrichment was bound as to the estate, which I would sort of correspond to Judge Benjamin's earlier statement this morning in saying how can there be unjust enrichment when it was paid correctly according to the policy and the two going hand in hand? That is the path the district court took. It's a potential path to take and a correct path, and we would request affirmance. But independently, my argument is that independently of this novel unjust enrichment claim that's unmoored from standards as to inequitable circumstances under Maryland law, regardless of what the Fourth Circuit were to conclude on that, as to Pruko, there's no claim stated. There's no case in controversy stated at this point, given it does not have the proceeds. So even if they prevailed on the unjust enrichment, you're saying there's nothing? Correct. Well, you sound like you're in a pretty good position. I'm trying to understand. Do you want to now convince us otherwise? No. I know when to leave the room. If you don't have any other questions, Your Honors. Thank you. Thank you. All right. We have, I guess Ms. Gaines has some rebuttal. Yes, sir. Your Honors, the reason that we put in the Kowalski case is to kind of move us. What's been discussed, what the lower cut discussed, is what's typical in insurance cases. This is a unique— Let me just cut through this, and I think I'm trying now to arise above any of the discussions and see what the issue is. I think what the issue is that there has to be an attempt, some steps taken to change a beneficiary, clear intent and some attempts, and it was interrupted. Those clear attempts to change the beneficiary were interrupted by death. And in those circumstances, cases have given equitable benefit to that attempt. The question is, is that circumstance been presented in this case? No, that has not been presented in this case. And that's why we use the Kowalski case because that court, the Southern District of Florida, got what we are asserting. I understand that answer. I think Judge Niemeyer, it sounds like to me he walked through your case and said that in this particular case, you have to establish that there was some intent to change the beneficiary. And that gives you equitable relief if you're able to do that, and so he took reasonable steps to do it. And then he asked, has that been done in this case? You said no. No steps whatsoever did Moore take to change the beneficiary. No steps whatsoever was there to reasonably do—didn't even intend to change the beneficiary. Is that true? No, sir, I'm not saying that. That is not true. What I'm saying is that the equitable issue that the court below raised and what the court is talking about here is based on the contract claim with the insurance company. That's not what's happening here with the estate. It's not about the contract claim with the insurance company. It isn't true. But you are missing the fundamental point, is that if there isn't some way to get the contract in line with inequitable distribution, which would be to change the beneficiary, in the absence of that kind of evidence, the insurance company is paying a benefit perfectly—I mean, obliged to make to the estate. That was the only beneficiary, and the only way—and that eliminates any unjust enrichment because it was legal. It was no deception. The question you have to demonstrate, and that's what I was trying to get you to focus on, is that you have to demonstrate that the beneficiary on the policy really and equitably should have been changed because of a clear intent and steps taken. And in the absence of a clear intent and steps taken, the policy governs and there can't be any unjust enrichment. That's what I thought the issue was, and it seems to me that's the only legal basis for an issue. Respectfully, Your Honor, it's not. What I'm trying to get the court to move away from is the typical insurance rubric that we're discussing here. The equitable relief that the court was talking about is about can we equitably change a contract based on these issues? Do they intend to change the beneficiary? That's where the money came from. But that's not the issue. It's not about whether we can equitably change the insurance contract. I used Kowalski because that court got what we're saying. That's the issue. That case is different because there Kowalski thought was paying and thought that they were the beneficiary, and there was no other evidence to say that they were not. Here, Ms. Murphy knew that she was not the beneficiary. That was the whole purpose of the meeting in March. That was the whole purpose of the e-mail that came back was because she knew at that point, we know that she knew in March of 2020, regardless if she can remember the meeting, she got this e-mail. The e-mail confirms that she was not the beneficiary. That's not the case in Kowalski. The reason they, because Kowalski continued to pay the premium under the impression that Kowalski was the beneficiary. That's not the case here. She knew she wasn't the beneficiary. Even if she can't remember the meeting, she's acknowledging the e-mail, and in the e-mail it's discussing that she is not the beneficiary. At that point in March, but the court has to look at what happened after that meeting in March. After that meeting in March, I don't know how we can look at the e-mail and say unequivocally that it came out that they weren't sure what to do. That e-mail clearly says that the policy was to change to beltway paving, and it says for Tim's policy- Number two, he testified that the issue was not resolved at the meeting, and he was making recommendations, and his recommendation was that not even what was discussed, that paving be made the beneficiary. Your Honor- And then he asked them to make a change, but there's no, the person you have to focus on is Moore. He's the only one that could have made the change, and he never intended, there's no evidence he ever intended to make a change. Your Honor, for a breach of contract claim against the insurance company- He never needed to make a change, and to equitably adjust that contract with the insurance company, he needed to make a change. But for- The only way, just a minute, the only way Murphy could claim the benefit of this, or paving could claim the benefit, is if Moore intended to change. Because Moore was the owner of the policy. He was the, he paid it. He used the paving money to pay for it, but he was the owner of the policy. He designated the beneficiary, and he became the beneficiary, his estate. And the facts show he intended to change it. And he never, he expressed an intent to change the beneficiary at that meeting, but it was to his wife. And- And Murphy intended to change the beneficiary to she and her brother. Your Honor, but the email also shows that both parties- The agent was at the meeting, and he recommended that he pave it. But the point is, you have three different possibilities for beneficiaries, and nobody made a decision or request. And the insurance company asked for a request, and never got it. Your Honor, respectfully, the intent was to change it. The email shows they intended to change it. Ms. Murphy testified that after that period, they intended to change it. And she continued to pay the premiums because she thought that, in fact, it had been changed. She made a claim under the policy because she thought that it had been changed. Under Maryland law, the defendant who has received money from the plaintiff, even if it's by mistake, even though the mistake is an honest one-  Who sent the email? The email was sent by Craig Schubert, but the email is- Do you have anything from Mr. Moore indicating he intended to do it? Yes. What is the evidence that Mr. Moore said he intends to do this? Ms. Murphy- I'm sorry, Your Honor, I didn't mean to interrupt you. Ms. Murphy's testimony. She made clear that even after that meeting, Mr. Moore indicated he was going to make sure that those changes were effectuated. Do you have the hearsay testimony of Ms. Murphy? What I want to know is, what is the testimony of, where is the evidence of Moore actually doing something? Did he submit that form? For an unjust enrichment claim, we don't need the evidence that he actually submitted the form. Yes, sir. He never submitted the form. He could have, and he never took any steps in those eight months to do anything himself. You have other people who now say he intended, he could have done that sort of thing. I don't know. Maybe that's admissible or not. Particularly once a person is gone, maybe it's a statement of interest in some instances or not. But the question here is, what did Mr. Moore do? In that email, he didn't write. Your Honor, Mr. Moore did not actually make the steps to change the policy. That would be a relevant fact if this were a breach of contract claim. Let me hear that again. You said Mr. Moore made no steps to change the policy. I didn't say no steps. But he did not make the steps to change the policy. He didn't fill out a form and say, I want the beneficiary to change. There's no evidence of that. He didn't make any steps at all. Yes, sir. He had this meeting. What did he do? You can see from the email that they had a meeting where it says that those I instructed Schubert to change. Okay, well, he asked me if he made any steps. Any is a big word. And having the meeting, telling your CEO. Yeah, but the steps that he made is consistent with Mr. Schubert's testimony. Because then why is Mr. Schubert discussing money going to Moore's wife in the email? That email, Your Honor, is inconsistent with the testimony to the extent it suggests that they didn't want this subject policy to change to beltway paving. You can see from the email that there was a discussion of it. Mr. Schubert's testimony is that they fought about it. On that email, it says, with respect to this policy, that beltway paving should be the beneficiary. Then it said, under action items, when there's testimony that they wanted $2 million, it's clear on that email that there was a discussion that Tim was supposed to make sure there was $2 million for beltway paving, and it was to come from this subject policy. So that's clear. Mr. Schubert's testimony on that fact is actually inconsistent with this email and this business record.  I think we've heard this. Okay. We're through this. Thank you for this. All right. Thank you. Thank you, Your Honor. We've extended the time. Thank you. We'll adjourn court for the day. There's no further arguments. No. You've got another case you might want to hear. I might want to hear the last case. All right. Thank you. We'll come down and greet counsel. Thank you. What's up, everybody?
judges: Paul V. Niemeyer, James Andrew Wynn, DeAndrea Gist Benjamin